LINKLATERS LLP
1345 Avenue of the Americas
New York, New York  10105
(212) 903-9000
(212) 903-9100 (fax)
Paul S. Hessler

*Attorneys for Petitioner and Cross-Respondent B/E Aerospace, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| B/E Aerospace, Inc.,<br><br>                    Petitioner and<br>                    Cross-Respondent,<br><br>        v.<br><br>Jet Aviation St. Louis, Inc., f/k/a Midcoast Aviation,<br><br>                    Respondent and<br>                    Cross-Petitioner. | Case No.: 11 Civ. 8569 (SAS) |

PETITIONER'S CONSOLIDATED REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS PETITION
FOR JUDGMENT VACATING FINAL ARBITRATION AWARD
AND OPPOSITION TO CROSS-PETITIONER'S
<u>MOTION TO CONFIRM FINAL ARBITRATION AWARD</u>

February 13, 2012

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.    THE TRIBUNAL'S AWARD OF CONSEQUENTIAL DAMAGES WAS IN MANIFEST DISREGARD OF THE LAW AND BEYOND THE POWER OF THE ARBITRATORS, BECAUSE THE AWARD IS PREMISED ON A DUPLICATIVE NEGLIGENCE CLAIM AND IS CONTRARY TO THE PARTIES' AGREEMENT TO LIMIT LIABILITY. ................................................................................................. 2

     A.    The Tribunal's Use of Midcoast's Duplicative Negligent Misrepresentation Claim as a Justification for Awarding Consequential Damages Was in Manifest Disregard of the Law .......................................................................................... 2

     B.    The Parties' Agreement To Limit Damages Required the Tribunal To Abstain from Awarding Consequential Damages. ............................................................. 4

II.   THE TRIBUNAL'S AWARD OF ATTORNEY'S FEES BASED ON B/E AEROSPACE'S EXERCISE OF ITS RIGHT TO SEEK JUDICIAL INTERVENTION UNDER SECTION 5 OF THE FEDERAL ARBITRATION ACT WAS IN MANIFEST DISREGARD OF THE LAW AND THE PARTIES' AGREEMENT. ............................................................................................................. 7

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

Page

## CASES

*Abramowitz v. N.Y. Univ. Dental Ctr., College of Dentistry*,
494 N.Y.S.2d 721 (N.Y. App. Div. 1985) .................................................................. 5

*Aviall, Inc. v. Ryder System, Inc.*,
110 F.3d 892 (2d Cir. 1997) ....................................................................................... 9

*B/E Aerospace, Inc. v. Jet Aviation St. Louis, Inc.*,
No. 11 Civ. 4032 (SAS), 2011 WL 2852857 (S.D.N.Y. July 1, 2011) ............... 7, 8, 9

*Chase Manhattan Bank, N.A. v. Remington Prods., Inc.*,
865 F. Supp. 194 (S.D.N.Y. 1994) ............................................................................ 3

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
516 N.E.2d 190 (N.Y. 1987) ............................................................................. 2, 3, 4

*Fleet Bank v. Pine Knoll Corp.*,
736 N.Y.S.2d 737 (N.Y. App. Div. 2002) ................................................................. 3

*Gross v. Sweet*,
400 N.E.2d 306 (N.Y. 1979) ...................................................................................... 5

*Jock v. Sterling Jewelers, Inc.*,
646 F.3d 113 (2d Cir. 2011) ....................................................................................... 6

*O'Csay v. Yolo Equities Corp.*,
No. 07-0586, 2009 WL 1582466 (N.Y. Sup. Ct. June 1, 2009) ................................. 5

*OP Solutions, Inc. v. Crowell & Moring, LLP*,
900 N.Y.S.2d 48 (N.Y. App. Div. 2010) ................................................................ 2, 3

*Pleasant Hill Developers, Inc. v. Foxwood Enterprises, LLC*,
885 N.Y.S.2d 531 (N.Y. App. Div. 2009) ................................................................. 3

*Rigney v. Ichabod Crane Cent. School Dist.*,
874 N.Y.S.2d 280 (N.Y. App. Div. 2009) ................................................................. 5

*Stop & Shop Supermarket Co., LLC v. United Food &
Comm. Workers' Union Local 342, AFL–CIO, CLC*,
No. 06 Civ. 3201 (LBS), 2006 WL 1148728 (S.D.N.Y. May 1, 2006) .................. 7, 9

## STATUTES

9 U.S.C. § 5 ................................................................................................. 1, 7, 8, 9, 10

9 U.S.C. § 10 .............................................................................................................. 1, 6

Petitioner B/E Aerospace, Inc. ("B/E Aerospace") respectfully submits this consolidated reply memorandum of law in further support of its Petition, pursuant to 9 U.S.C. § 10, to vacate the final award made by the Commercial Arbitration Tribunal of the American Arbitration Association (the "Final Award"), and in opposition to the motion of Cross-Petitioner, Jet Aviation St. Louis, Inc., f/k/a Midcoast Aviation ("Midcoast"), to confirm the Final Award.[1]

## PRELIMINARY STATEMENT

Midcoast characterizes B/E Aerospace's Petition as a "frontal assault on the dispute resolution procedure." (Midcoast Br. at 1.) But, as Midcoast readily acknowledges, B/E Aerospace has not challenged the award of direct damages for breach of the Agreement. Rather, B/E Aerospace's Petition for Judgment Vacating Final Arbitration Award (the "Petition") presents a narrow challenge, focusing only on the Tribunal's decision to award consequential damages and attorney's fees. In reaching that decision, the Tribunal ignored settled New York law prohibiting tort claims that duplicate contract claims and enforcing limitation of liability clauses like the one embodied in the parties' contract. In doing so, it also effectively rewrote the parties' contract, which provided that "in no event shall" either party be liable for consequential damages. Moreover, despite the Court's Order confirming B/E Aerospace's right to bring its earlier action (the "SDNY Action") under Section 5 of the Federal Arbitration Act, 9 U.S.C. § 5, *and* the parties' contract that provided that each attorney's party would bear its own costs, the

---

[1]  Capitalized terms, unless otherwise defined, have the same meaning given to them in Petitioner's Memorandum of Law in Support of its Petition for Judgment Vacating Final Arbitration Award (the "Opening Memorandum"), filed in this Court on November 23, 2011.

References to "Blonder Decl." are to the Declaration of Steven P. Blonder, which appears as Exhibit N to the Declaration of Paul S. Hessler, submitted in support of B/E Aerospace's Petition for Judgment Vacating Final Arbitration Award, dated November 23, 2011.

Tribunal also impermissibly awarded Midcoast the attorney's fees it incurred in connection with the SDNY Action.

Midcoast attempts to defend the award of consequential damages and attorney's fees, arguing that New York law permits that type of relief under certain circumstances. But, as explained below and in B/E Aerospace's Opening Memorandum, those circumstances are not present here. The Tribunal's award includes forms of damages that the parties themselves agreed would be unavailable, that were imposed in manifest disregard of the New York law presented to the Tribunal, and that exceeded the scope of the arbitrators' powers. Those portions of the award should be vacated.

## ARGUMENT

I. THE TRIBUNAL'S AWARD OF CONSEQUENTIAL DAMAGES WAS IN MANIFEST DISREGARD OF THE LAW AND BEYOND THE POWER OF THE ARBITRATORS, BECAUSE THE AWARD IS PREMISED ON A DUPLICATIVE NEGLIGENCE CLAIM AND IS CONTRARY TO THE PARTIES' AGREEMENT TO LIMIT LIABILITY.

  A. The Tribunal's Use of Midcoast's Duplicative Negligent Misrepresentation Claim as a Justification for Awarding Consequential Damages Was in Manifest Disregard of the Law.

It is a matter of settled New York law that a tort claim cannot stand when the claim merely duplicates a breach of contract claim. *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190, 193-94 (N.Y. 1987); *OP Solutions, Inc. v. Crowell & Moring, LLP*, 900 N.Y.S.2d 48, 49 (N.Y. App. Div. 2010).[2] The Tribunal, though aware of this body of law,

---

[2] In its Opposition brief, Midcoast claims that the Petition should be denied because B/E Aerospace did not place this body of law before the Tribunal. That claim is demonstrably incorrect: B/E Aerospace argued before the Tribunal that Midcoast's negligent misrepresentation claim should be dismissed as duplicative of its tort claim and, in support of that proposition, cited to applicable New York case law. *See* Blonder Decl., Ex. G at 11 (citing *OP Solutions, Inc. v. Crowell & Moring, LLP*). Moreover, despite Midcoast's efforts to portray *OP Solutions* as an isolated opinion, that case itself relies on

2

nevertheless proceeded to award Midcoast consequential damages based on a supposed "special relationship" that it found existed between Midcoast and B/E Aerospace.[3] But the existence of a special relationship is itself insufficient to provide a separate basis for recovery if, as is the case here, the tort claim is merely duplicative of a contract claim. *See OP Solutions,* 900 N.Y.S.2d at 49; *Clark-Fitzpatrick, Inc.*, 516 N.E.2d at 193; *Chase Manhattan Bank, N.A. v. Remington Prods., Inc.,* 865 F. Supp. 194, 200 (S.D.N.Y. 1994). What is lacking in this case is a duty *independent of the contractual duty* that gives rise to a negligent representation claim. *Clark-Fitzpatrick, Inc.*, 516 N.E.2d at 193-94; *Chase Manhattan Bank*, 865 F. Supp. at 200. The Tribunal acknowledged this indispensable requirement, but proceeded nonetheless to permit Midcoast's negligent misrepresentation claim. That decision is grounds for vacating the consequential damages award.

       In its Opposition, Midcoast continues to rely on the body of New York law that holds that, in some instances, a special relationship *may* justify maintaining claims sounding in both contract and tort. (Midcoast Br. at 10-14, 20.) But, as explained above, those cases are inapposite here because they discuss special relationships arising outside of the context of an arms-length, contractual relationship and not merely a simple contractual relationship like the one between B/E Aerospace and Midcoast. *See, e.g., Fleet Bank v. Pine Knoll Corp.*, 736 N.Y.S.2d 737, 741-42 (N.Y. App. Div. 2002) (discussing potential special relationship in context of banking relationship) (cited at Midcoast Br. at 11, 14); *Pleasant Hill Developers, Inc. v. Foxwood Enterprises, LLC*, 885 N.Y.S.2d 531, 535 (N.Y. App. Div. 2009) (discussing whether

---

        a larger, well settled body of law on precisely the point of law at issue. *See* 900 N.Y.S.2d at 49 (relying on, *inter alia*, *Clark-Fitzpatrick*, 516 N.E.2d 190).

[3]    As Midcoast is aware, B/E Aerospace also argued before the Tribunal that consequential damages could not be awarded in light of the parties' agreement that "in no event shall Buyer or Seller be liable for any special, indirect, or consequential damages." *See* Blonder Decl., Ex. A at 20.

an escrow payment represented a limitation on liability, but not discussing a special relationship) (cited at Midcoast Br. at 20). Despite Midcoast's attempt to argue that there were *separate* breaches giving rise to its contract claim and its negligent misrepresentation claim (Midcoast Br. at 15), the Tribunal's award plainly relies on the *same* breach with regard to both claims and did not point to any independent duty. The Tribunal found that B/E breached the Agreement when it failed "to provide products which would conform to all FAA requirements." Blonder Decl., Ex. H at 3. The fact that Midcoast believed, following the delivery of testing results and Certification Control Drawings, that the products conformed to the FAA requirements did not give rise to a separate duty (or breach thereof) arising from the supposed special relationship. *See Clark-Fitzpatrick*, 516 N.E.2d at 194.

Indeed, the court in *Clark-Fitzpatrick* rejected a duplicative negligence claim that closely resembles the negligent misrepresentation claim pursued by Midcoast:

> [T]he damages plaintiff allegedly sustained as a consequence of defendant's violation of a "duty of due care" in designing the project were clearly within the contemplation of the written agreement, as indicated by the design change and adjusted compensation provisions of the contract. Merely charging a breach of a "duty of due care", employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim.

*Id.* This Court should, therefore, vacate the award of consequential damages because the negligent misrepresentation claim merely duplicated Midcoast's contract claim.

**B.  The Parties' Agreement To Limit Damages Required the Tribunal To Abstain from Awarding Consequential Damages.**

In addition to the grounds set forth above, the Tribunal's award of consequential damages should be vacated for a second, independent reason: the award was expressly prohibited by the parties' Agreement, and the Agreement should have been enforced as written. The Tribunal recognized that the parties agreed to forego consequential damages, but it went on

4

to state that because the prohibition against consequential damages was "contained in the Agreement between the parties" it would " not prevent the Panel from imposing Consequential Damages in [sic] Midcoast's tort claims herein under New York law." Blonder Decl., Ex. H at 9. That reading of the Agreement's limitation of liability clause was in manifest disregard of New York law, leading the Tribunal to exceed its powers, and, therefore, the award of consequential damages should be set aside even if Midcoast's negligent misrepresentation claim is permitted to stand.

      Midcoast argues that the scope of the limitation of liability clause is, at most, a question of contract interpretation because the clause did not explicitly limit consequential damages for claims sounding in tort. (Midcoast Br. at 16-19.) The body of cases it relies on (Midcoast Br. at 18), however, emphasizes the public policy requirement that *exculpatory* clauses that purport to absolve a part of *any and all liability* must specifically exclude liability based on negligence. *See Gross v. Sweet,* 400 N.E.2d 306, 308 (N.Y. 1979) (examining "release [that] exculpated the defendant from *any* liability" (emphasis added)); *Rigney v. Ichabod Crane Cent. School Dist.*, 874 N.Y.S.2d 280, 282 (N.Y. App. Div. 2009) (examining "release in which [plaintiff] agreed to hold defendant harmless for *all claims* arising in any way out of her participation in the class" (emphasis added)); *Abramowitz v. N.Y. Univ. Dental Ctr., College of Dentistry*, 494 N.Y.S.2d 721, 722 (N.Y. App. Div. 1985) (examining exculpatory clause providing, "I hereby release and agree to save harmless NEW YORK UNIVERSITY, its doctors and students from *any and all liability* arising out of or in connection with any injuries or damages which I may sustain while on its premises, or as a result of any treatment in its infirmaries." (emphasis added)); *O'Csay v. Yolo Equities Corp.*, No. 07-0586, 2009 WL 1582466

(N.Y. Sup. Ct. June 1, 2009) (considering whether contract's limitation provisions precluded liability for negligence).

Unlike the cases cited by Midcoast, however, the limitation of liability clause contained in the Agreement is not an exculpatory clause. The clause in this case only *narrows* the scope of both Midcoast's and B/E Aerospace's liability by stating in unmistakable terms that "*in no event* shall Buyer or Seller be liable for any special, indirect, or consequential damages." Blonder Decl., Ex. A at 20 (emphasis added). Missing from that clause is a disclaimer of liability for *direct* damages, and indeed B/E Aerospace has not attempted to set aside the Tribunal's award of direct damages arising from the breach of the Agreement.

The Tribunal's decision to grant consequential damages cannot, therefore, be supported by the exculpatory clause cases relied on by Midcoast in this Court. B/E Aerospace's Post-Arbitration Brief informed the Tribunal of New York law regarding the enforcement of limitation of liability clause, Blonder Decl., Ex. G at 25-26, and Midcoast has not cited any case requiring a limitation of liability clause to contain the specificity required of exculpatory clauses. The decision to grant consequential damages, which were prohibited by the Agreement, should therefore be vacated because it was in manifest disregard of the law and, moreover, exceeded the scope of the Tribunal's powers.[4]

---

[4] Contrary to Midcoast's argument, the Tribunal's award is not immune from attack under Section 10(a)(4) of the Federal Arbitration Act, which permits courts to vacate decisions that exceed the powers of arbitrators, simply because the grant of consequential damages was also in manifest disregard of the law. (Midcoast Br. 16.) A decision may be vacated under Section 10(a)(4) when a tribunal reaches "issues clearly prohibited by law or by the terms of the parties' agreement." *Jock v. Sterling Jewelers, Inc.*, 646 F.3d 113, 122 (2d Cir. 2011). In this case, the Tribunal's decision to limit the scope of the limitation of liability clause (so that it could award consequential damages) was in manifest disregard of New York law and consequential damages were prohibited by the Agreement.

6

## II. THE TRIBUNAL'S AWARD OF ATTORNEY'S FEES BASED ON B/E AEROSPACE'S EXERCISE OF ITS RIGHT TO SEEK JUDICIAL INTERVENTION UNDER SECTION 5 OF THE FEDERAL ARBITRATION ACT WAS IN MANIFEST DISREGARD OF THE LAW AND THE PARTIES' AGREEMENT.

Midcoast attempts to justify the Tribunal's grant of attorney's fees, in contravention of established law and the parties' Agreement to bear their own costs, by arguing that B/E Aerospace was not entitled to exercise its right under the Federal Arbitration Act to commence the SDNY Action, or because B/E Aerospace did not preserve its ability to argue in this Court that the fees should not have been granted. (Midcoast Br. at 20-25.) Neither argument should prevent this Court from setting aside the award of attorney's fees.

Midcoast's argument is a veiled criticism of the Court's exercise of its duty under Section 5 of the Federal Arbitration Act, 9 U.S.C. § 5, to ensure that parties to an arbitration agreement adhere to the agreement's provisions relating to the selection of arbitrators. *See B/E Aerospace, Inc. v. Jet Aviation St. Louis, Inc.*, No. 11 Civ. 4032 (SAS), 2011 WL 2852857 (S.D.N.Y. July 1, 2011) (Jones, J.). Following the appointment of two arbitrators that B/E Aerospace viewed as lacking the qualifications required under the parties' arbitration agreement, B/E Aerospace turned to the Court for an order staying the arbitration. The Court recognized that it had a "'duty under [Section] 5' to determine whether a party failed 'to avail itself of the proper method' of arbitration, as set forth in the parties' contract." *Id.* at *2 (quoting *Stop & Shop Supermarket Co., LLC v. United Food & Comm. Workers' Union Local 342, AFL–CIO, CLC*, No. 06 Civ. 3201 (LBS), 2006 WL 1148728, at *2 (S.D.N.Y. May 1, 2006)). The Court declined to stay the arbitration, but did not question B/E Aerospace's ability to seek relief under Section 5. In fact, the Court affirmatively held that it was the Court's province, not that of the arbitrators, to judge whether the arbitrators were appointed in conformity with the parties' Agreement. *See B/E Aerospace*, 2011 WL 2852857, at *1 ("[i]n cases such as this . . . where the 'parties have agreed

7

to arbitrate, but disagree as to the operation or implementation of that agreement, under the [FAA] it is properly a matter for the court.'" (citation omitted)). It cannot have been a breach of the parties' Agreement to have brought the SDNY Action, just as it is not a breach to have brought the current action to vacate the arbitration award. If the Tribunal's award of attorney's fees is allowed to stand, it will have the effect of empowering arbitrators to punish a party that exercises its rights under the FAA.

Contrary to Midcoast's argument (Midcoast Br. at 21-22), B/E Aerospace informed the Tribunal of the legal basis for the SDNY Action and, indeed, provided the Tribunal with the Court's Order holding that the Court was the proper forum in which to challenge the appointment of the arbitrators. B/E Aerospace reminded the Tribunal in its Post-Arbitration Brief that "[t]he federal district judge agreed BE had standing to challenge the arbitrator selection process, but ruled against it on the merits of that challenge." Blonder Decl., Ex. G at 38 n.26. The Court's Order permitting B/E Aerospace to proceed under Section 5 was cited in the Post-Arbitration Brief and was introduced as Exhibit 70 in the arbitration. *Id.*

Despite being apprised of it, the Tribunal disregarded that established law, and imposed on B/E Aerospace attorney's fees based on the plainly incorrect determination that initiation of the SDNY Action was a "breach of the mandatory dispute resolution provision[s] of the Agreement." Blonder Decl., Ex. H at 8. That determination contradicts the Court's earlier decision, and constitutes manifest disregard of the law. The award of attorney's fees also contradicts the parties' Agreement. In the Agreement, each party agreed to "be solely responsible for its own attorneys fees, or other fees for professional services rendered to such Party in connection with the arbitration," Blonder Decl., Ex. A at 19, and it strains credibility to

8

argue that a proceeding permitted under the Federal Arbitration Act is not "in connection with the arbitration."

In its Opposition, Midcoast again asserts, as it did throughout the SDNY Action, that B/E Aerospace could "*not* challenge the arbitrator's qualifications during a pending arbitration." (Midcoast Br. at 23 (emphasis in the original)). That legal argument was already rejected by the Court, *B/E Aerospace*, 2011 WL 2852857, at *2. Moreover, *Stop & Shop Supermarket*, the case relied on by the Court when it interpreted Section 5, cited and distinguished *Aviall, Inc. v. Ryder System, Inc.*, 110 F.3d 892, 895 (2d Cir. 1997), the leading case cited by Midcoast in the Court (Midcoast Br. at 23), for the proposition that Section 5 does not permit review before a tribunal renders its award. *See Stop & Shop Supermarket*, 2006 WL 1148728, at *3 (distinguishing *Aviall*). Midcoast's legal argument has already been decided against it, and remains without merit.[5]

Finally, Midcoast attempts to defend the award of attorney's fees by seizing on the Tribunal's suggestion that B/E Aerospace prolonged the SDNY Action. (Midcoast Br. at 24.) Without any citation to case law, Midcoast argues that the Tribunal's characterization – which, though beyond the scope of this Court's review, is itself an error of fact by the Tribunal (B/E Motion at 18) – could alone justify an award of attorney's fees. This Court should not, however, look past the Tribunal's manifest disregard of the Court's Order, the legal analysis contained in

---

[5] Midcoast also incorrectly argues that B/E Aerospace opened the door to attorney's fees under American Arbitration Association Rule 43(b) and (d)(ii), when B/E Aerospace answered the Demand for Arbitration with a general request for relief including attorney's fees. (Midcoast Br. 24-25.) B/E Aerospace, however, specifically objected to the award of fees in its Post-Arbitration Brief, *see* Blonder Decl., Ex. G at 38, and therefore there can be no argument that at the time the Tribunal issued its award B/E Aerospace had waived the Agreement's clause requiring each party to bear its own expenses. Moreover, the attorney's fees award challenged by B/E Aerospace is not for Midcoast's expenses in the arbitration, but rather for Midcoast's expenses in the SDNY Action.

that Order, and the parties' Agreement to bear their own costs.  The SDNY Action was not a breach of the agreement to arbitrate but rather was permitted under Section 5, and therefore the award of attorney's fees should be vacated.

## CONCLUSION

For the reasons stated above, as well as in the Petitioner's Memorandum of Law in Support of its Petition for Judgment Vacating Final Arbitration Award, B/E Aerospace respectfully requests that the Court vacate the award of consequential damages as well as the attorney's fees awarded for the filing of the SDNY Action. B/E Aerospace also respectfully requests that the Court deny Midcoast's Motion to Confirm Final Arbitration Award.

Dated:   New York, New York
         February 13, 2012

Respectfully submitted,

LINKLATERS LLP

By:   /s/ Paul S. Hessler
      Paul S. Hessler
      1345 Avenue of the Americas
      New York, NY 10105
      (212) 903-9000
      (212) 903-9100 (fax)

*Attorneys for B/E Aerospace, Inc.*