UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| B/E AEROSPACE, INC.,<br><br>　　　　　　Petitioner and<br>　　　　　　Cross-Respondent,<br><br>　　v.<br><br>JET AVIATION ST. LOUIS, INC. F/K/A<br>MIDCOAST AVIATION, INC.,<br><br><br>　　　　　　Respondent and<br>　　　　　　Cross-Petitioner. | No. 11 Civ. 8569 (SAS) |

**MIDCOAST'S REPLY BRIEF IN SUPPORT OF ITS MOTION
<u>TO CONFIRM ARBITRATION AWARD</u>**

　　　　　　　　　　　　　　　　　　　　Michael A. Doornweerd
　　　　　　　　　　　　　　　　　　　　Andrew F. Merrick
　　　　　　　　　　　　　　　　　　　　JENNER & BLOCK LLP
　　　　　　　　　　　　　　　　　　　　353 North Clark Street
　　　　　　　　　　　　　　　　　　　　Chicago, IL 60654
　　　　　　　　　　　　　　　　　　　　Telephone: (312) 923-2631
　　　　　　　　　　　　　　　　　　　　MDoornweerd@jenner.com
　　　　　　　　　　　　　　　　　　　　AMerrick@jenner.com

　　　　　　　　　　　　　　　　　　　　– and –

　　　　　　　　　　　　　　　　　　　　Joseph J. McFadden
　　　　　　　　　　　　　　　　　　　　JENNER & BLOCK LLP
　　　　　　　　　　　　　　　　　　　　919 Third Avenue
　　　　　　　　　　　　　　　　　　　　37th Floor
　　　　　　　　　　　　　　　　　　　　New York, NY 10022-3908
　　　　　　　　　　　　　　　　　　　　Telephone: (212) 891-1658
　　　　　　　　　　　　　　　　　　　　JMcFadden@jenner.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Jet Aviation St. Louis, Inc.*
　　　　　　　　　　　　　　　　　　　　*f/k/a Midcoast Aviation, Inc.*

## **INTRODUCTION**

In its opposition brief, B/E essentially ignores the stringent legal standard that it must meet to establish that the arbitrators manifestly disregarded the law, and instead argues that the Court should accept B/E's interpretation of contested legal issues that have already been decided against it by the Tribunal.  The issue under the Federal Arbitration Act at this juncture of the proceedings, however, is not whether this Court agrees with Midcoast's or B/E's interpretation of the disputed legal issues in the case.  Rather, the issue is whether the Tribunal "knew of [a] relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law in refusing to apply it."  *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 217 (2d Cir. 2002).  B/E does not even come close to satisfying that standard in this case.  Nor could it, because the Tribunal's unanimous Award correctly applied New York law to the facts established by Midcoast, which facts B/E does not, and cannot, contest.  At bottom, B/E's opposition to Midcoast's motion to confirm the Award is nothing more than an attempt to relitigate the merits of the underlying dispute in a different forum.  That is not permissible under well settled Second Circuit precedent.  Accordingly, the Court should confirm the Tribunal's Award in its entirety and deny B/E's petition to vacate.

**I.      The Tribunal Did Not Manifestly Disregard the Law When It Found B/E Liable For Both Negligent Misrepresentation and Breach of Contract.**

As an initial matter, the Tribunal did not manifestly disregard the law when it found B/E liable for negligent misrepresentation because there is no "well defined, explicit, and clearly applicable" New York law that precludes Midcoast from recovering non-duplicative damages under negligent misrepresentation and breach of contract claims, and the Tribunal did not "intentionally disregard" controlling New York law when it ruled in Midcoast's favor.

As detailed in Midcoast's opening brief, a plaintiff may pursue a negligent misrepresentation claim and a breach of contract claim in the same proceeding where it establishes an "independent legal duty" based on the existence of a "special relationship." (Midcoast Br. at 11-13.)  In its opposition brief, B/E concedes, as it must, "that, in some instances, a special relationship *may* justify maintaining claims sounding in both contract and tort" (B/E Opp. at 3 (emphasis in original), citing Midcoast Br. at 10-14, 20), but B/E nevertheless argues that such a relationship can only exist "outside of the context of an arms-length, contractual relationship" (*id.*).

The New York Court of Appeals, however, has repeatedly confirmed that a "special relationship" may arise in a "commercial context" where the defendant "possess[es] unique or specialized expertise, or [is] in a special position of confidence and trust with the injured party." *Kimmell v. Schaefer*, 675 N.E.2d 450, 454 (N.Y. 1996); *see also Ossining Union Free Sch. Dist. v. Anderson*, 539 N.E.2d 91 (N.Y. 1989).  For example, in *Kimmell*, the Court held that a negligent misrepresentation claim lies where "the relationship of the parties, *arising out of contract or otherwise,* [is] such that in morals and good conscience the one has the right to rely upon the other for information." 675 N.E.2d at 454 (emphasis supplied).  Likewise, in *Ossining*, the Court noted that a plaintiff may pursue a claim for negligent misrepresentation "where there is *actual privity of contract between the parties* or a relationship so close as to approach privity." 539 N.E.2d at 94 (emphasis supplied).[1]  Thus, B/E's argument that a "special relationship" may

---

[1] B/E's cited cases stand for the same proposition.  For example, in *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 516 N.E.2d 190 (N.Y. 1987), the New York Court of Appeals explained that the independent legal duty "must spring from circumstances extraneous to, and not constituting elements of, the contract, *although it may be connected with and dependent upon the contract*." *Id.* at 194 (emphasis supplied). Here, Midcoast proved, and the Tribunal found as a matter of fact, "that B/E held themselves out in the marketplace as experts in the development, dynamic testing and certification of aircraft divans," that Midcoast lacked such expertise, that "Midcoast relied upon B/E's expertise in the development, testing and certification of said seating," and that but for B/E's expertise in those areas, Midcoast "wouldn't have

only arise "outside of the context of an arms-length, contractual relationship" is wrong as a matter of law.

Moreover, B/E failed to present the Tribunal with any "well defined, explicit, and clearly applicable" New York law on this issue.  Indeed, it was the Tribunal – and not B/E – that raised this issue after closing argument (Blonder Ex. E, at 621:15-22), and the only case that B/E cited in support of its position, *OP Solutions, Inc. v. Crowell & Moring, LLP*, 900 N.Y.S.2d 48 (N.Y. App. Div. 2010), merely concludes that a "claim for negligent misrepresentation is [] defective in the absence of a special relationship of confidence and trust between the parties."  That case is inapposite because the Tribunal found that there *was* a "special relationship" between Midcoast and B/E in this case (Award at 4-5) – a fact that B/E does not, and cannot, challenge here.

Nor is there any indication whatsoever that the Tribunal "intentionally disregarded" the law when it ruled against B/E.  An award may not be vacated "because of a simple error in law or failure by the arbitrators to understand or apply it, but only when a party clearly demonstrates that the panel intentionally defied the law." *STmicroelectronics, N.V. v. Credit Suisse Sec. LLC*, 648 F.3d 68, 78 (2d Cir. 2011).  As B/E admits in its opposition brief, the Tribunal "acknowledged" that Midcoast must establish an independent legal duty under New York law.  (B/E Opp. at 3.)  The Tribunal then found that Midcoast established such a duty based on the existence of a "special relationship."  (Award at 4-5.)  Since B/E does not and cannot challenge the Tribunal's factual finding that there existed a "special relationship" between the parties, the Tribunal did not "intentionally disregard" the law when it found that B/E owned Midcoast an independent legal duty, the breach of which could result in an award of damages.

---

entered into [the] contract" to purchase seating.  (Award at 4).  Thus, the Tribunal correctly found a duty of care based on circumstances extraneous to, although connected with, the parties' contract.

Finally, and in any event, Midcoast's negligent misrepresentation claim did not "merely duplicate" its breach of contract claim. In its opposition brief, B/E admits that the award on the breach of contract claim was based on B/E's failure "to provide products which would conform to all FAA requirements" (B/E Opp. at 4; *see also* Award at 3), while the award on the negligent misrepresentation claim was based on, *inter alia,* B/E's failure to "provide the necessary correct information to Midcoast to assist it in its STC certification application and the subsequent installation of said seating" (Award at 4). Because these are two separate breaches of two different duties, there is no basis to vacate the Award even under B/E's flawed interpretation of New York law.

## II. The Tribunal Did Not Exceed its Powers or Manifestly Disregard the Law When it Awarded Midcoast Consequential Damages.

The Tribunal did not manifestly disregard New York law when it interpreted the limitation of liability provision in the parties' Agreement as permitting Midcoast to recover consequential damages for B/E's negligent misrepresentation.

In its opposition brief, B/E fails to cite any "well defined, explicit, and clearly applicable" law holding that *every* limitation of liability provision applies to both contract and tort claims. To the contrary, B/E effectively concedes that the scope of a limitation of liability provision is a question of contract interpretation (B/E Opp. at 4-5 (arguing that the Tribunal's "reading of the Agreement's limitation of liability clause" was erroneous and "the Agreement should have been enforced as written"), and B/E does not dispute that matters of contract interpretation are not subject to review for manifest disregard of the law (B/E Opp. at 4-6 (ignoring Midcoast's cited authorities, including, for example, *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010) ("With respect to contract interpretation, this standard essentially bars

4

review of whether an arbitrator misconstrued a contract.").)  On this basis alone, the Court should uphold the award of consequential damages.

Moreover, B/E's argument that *Midcoast's* cited cases are distinguishable because they involve exculpatory clauses rather than limitations of liability (B/E Opp. at 5-6) is without merit. B/E – not Midcoast – bears the burden of establishing that the Tribunal was presented with "well defined, explicit, and clearly applicable" law that controls the specific legal question at issue. Having failed to cite any case law that would compel the Tribunal to interpret the limitation of liability provision in the Agreement as encompassing both tort and contract claims, B/E cannot meet *its* burden to establish manifest disregard of the law.  Further, while B/E attempts to distinguish Midcoast's cited cases on the ground that they involve exculpatory clauses as opposed to limitations of liability (a distinction that B/E did not present to the Tribunal), B/E does not explain why that distinction would matter given that a limitation of liability clause itself is intended to exculpate defendants from certain liabilities.  Tellingly, B/E also fails to cite any authority holding that New York law treats limitations of liability different from other kinds of exculpatory clauses.

Finally, in its opening brief, Midcoast presented an independent, alternative basis for upholding the Tribunal's award of consequential damages because the Tribunal found that there was a "special relationship" between the parties, which rendered the limitation of liability unenforceable.  (Midcoast Br. at 20, citing *Pleasant Hill Devs. v. Foxwood Enters., LLC*, 885 N.Y.S.2d 531, 534 (N.Y. App. Div. 2009) (holding that a limitation of liability provision is unenforceable where there is a "special relationship between the parties").)  B/E inexplicably ignores this argument altogether.  Because the Tribunal found a "special relationship" between the parties, which finding would provide an independent and alternative basis for not applying

5

the limitation of liability provision to Midcoast's consequential damages, the Court should uphold the award of consequential damages for this reason as well. *T.Co Metals*, 592 F.3d at 339 ("Even where explanation for an award is deficient or non-existent, [a court] will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.").

### III.   The Award of Attorneys' Fees Was Not In Manifest Disregard of the Law.

B/E also failed to demonstrate that the Tribunal manifestly disregarded the law when it awarded Midcoast attorneys' fees incurred defending the Federal Litigation. Not only did B/E fail to present the argument it now makes to the Tribunal in the first instance, but B/E also has not met its burden of establishing that the Tribunal "intentionally disregarded" New York law that was "well defined, explicit, clearly applicable."

As an initial matter, however, the Court need not even reach those issues because AAA Rule 43 expressly authorized the Tribunal's award of attorneys' fees. The parties' Agreement provides for arbitration under the AAA Commercial Rules. (Blonder Decl., Ex. A at MC003603.) AAA Rule 43(d)(ii) provides that the arbitrators may make "an award of attorneys' fees *if all parties have requested such an award* or it is authorized by law[.]" (emphasis added.) Here, it is undisputed that both parties requested an award of attorneys' fees. (Midcoast Br. at 25.) Accordingly, the Tribunal's award of fees was expressly permitted by AAA Rule 43 and was within the discretion of the Tribunal. In its opposition brief, B/E argues in a footnote that B/E "objected to the award of fees in its Post-Arbitration Brief [] and therefore there can be no argument that at the time the Tribunal issued its award B/E Aerospace had waived the Agreement's clause requiring each party to bear its own expenses." (B/E Opp. at 9, n.9.) This argument lacks merit. The mere fact that B/E argued *post-hearing* that Midcoast was not entitled to attorneys' fees does not undo the parties' mutual requests for fees made at the outset of the

6

arbitration nor does it divest the Tribunal of the power to award fees under AAA rules.[2] Moreover, B/E does not even challenge the Tribunal's award of $12,015 of fees and expenses awarded to Midcoast for having to respond to B/E's frivolous request for modification of the Award, which the Tribunal unanimously found to be an "abuse of the arbitration process" and "not in good faith." (Doornweerd Decl., Ex. B.) By virtue of the AAA rules and the parties' elections under those Rules, the Tribunal clearly had the power to award attorneys' fees in this case and, therefore, the award of fees should be upheld on this basis alone.

B/E's arguments that the Tribunal manifestly disregarded the law fare no better. In its opposition brief, B/E argues that it "informed the Tribunal of the legal basis for the SDNY action" and therefore it "preserve[d] its ability to argue in this Court" that the Tribunal manifestly disregarded the law. (B/E Opp. at 7-8.) Even a cursory review of the B/E's submissions, however, show that B/E never argued to the Tribunal that issues relating to the "operation or implementation" of an arbitration agreement are for the court. The *only* argument that B/E presented to the Tribunal as to why attorneys' fees should not have been awarded is that the parties' Agreement embodied the "American Rule" requiring each party to pay their own fees. (Blonder Decl., Ex. G at 38.) In connection with that argument, B/E made a passing reference in a footnote to the district court's ruling that B/E had "standing" to challenge the arbitrator's qualifications. (*Id.* at 38, n.24.) But that statement was made in connection with B/E's argument that the Agreement embodied the "American Rule" and did not apprise the Tribunal of B/E's different argument in this proceeding. Having failed to present this argument

---

[2] B/E's alternative argument that the Tribunal's award was impermissible because the expenses were incurred in the Federal Litigation rather than the underlying arbitration (B/E Opp. at 9, n.9), also is without merit. B/E has repeatedly argued that "the challenge [in the SDNY] was [] 'in connection' with the arbitration" (Blonder Decl., Ex. G at 38, n.24) and, thus, so too were Midcoast's fees. Further, there is nothing in AAA Rule 43 that would prevent the Tribunal from awarding attorneys' fees in connected litigation initiated for the purpose of halting a pending arbitration. To the contrary, Rule 43 gives the arbitrators broad authority to grant "any remedy or relief that the arbitrator deems just and equitable."

7

or this purported "body of federal law" to the Tribunal, B/E cannot meet its burden to establish that the Tribunal "intentionally disregarded" the law in ruling against B/E. *See, e.g., T.Co. Metals,* 592 F.3d at 339 ("In order to intentionally disregard the law, the arbitrator must have known of its existence.")

Moreover, B/E does not cite any "well defined, explicit, and clearly applicable" New York law on this issue. As discussed in Midcoast's opening brief, the weight of authority holds that arbitrator qualification issues may *not* be addressed prior to a final award. *See, e.g., Aviall, Inc. v. Ryder Sys., Inc.,* 110 F.3d 892, 895 (2d Cir. 1997) ("it is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award"); *Titan Pharm. & Nutrition, Inc. v. Med. Shoppe Int'l, Inc.,* 2006 WL 626051, at *6 (S.D.N.Y. Mar. 13, 2006) (denying motion for a preliminary injunction "to compel compliance with AAA rules on the process for selecting an arbitrator" because the AAA's decision is "reviewable by a district court only after an award has been made"). Further, B/E has not cited any authority holding that a plaintiff may continue to pursue a breach of contract lawsuit against a party to an arbitration agreement even after the court has denied its request for relief, which is what happened here. Thus, B/E's cited authority does not constitute "well defined, explicit, and clearly applicable" law.

Nor can B/E establish that the Tribunal "intentionally disregarded" controlling New York law. *Assuming arguendo* that B/E had actually presented its authority to the Tribunal (which it did not), that authority merely holds that the "operation or implementation" of an arbitration agreement is an issue for the court in the first instance. *See Stop & Shop Supermarket Co. v. United Food & Com. Workers' Union Local 42, AFL-CIO, CLC,* 2006 WL 1148728, at *2 (S.D.N.Y. May 1, 2006). However, as detailed in Midcoast's opening brief at 24, the Tribunal's

decision was also based on B/E's inexplicable failure and refusal to dismiss the Federal Litigation *after* the district court had rejected its FAA argument. In its opposition brief, B/E argues that "[t]his Court should not [] look past the Tribunal's manifest disregard of the Court's Order, the legal analysis contained in that Order, and the parties' Agreement to bear their own costs." (B/E Opp. at 9-10.) However, while B/E may not want this Court to look at the fact that B/E needlessly prolonged the Federal Litigation and forced Midcoast to file a motion to dismiss it, there is nothing impermissible with the Tribunal awarding fees based on B/E's refusal to dismiss the Federal Litigation. Accordingly, on this record, B/E cannot establish that the Tribunal "intentionally disregarded" controlling New York law.

**CONCLUSION**

For the reasons set forth herein and in Midcoast's opening brief, Midcoast respectfully requests that the Court confirm the Tribunal's Award in its entirety, including the award of $2,392,145 in direct damages (which includes the $84,543 in attorneys' fees for the Federal Litigation), the award of $932,070 in consequential damages, and the award of $12,015 in fees and costs for having to respond to B/E's modification request, all of which are accruing post-judgment interest at a rate of 9% as set forth in the Award.

Dated:  February 21, 2012                    Respectfully submitted,

                            JET AVIATION ST. LOUIS, INC. F/K/A
                            MIDCOAST AVIATION, INC.

                            By:    /s/ Michael A. Doornweerd
                                    One of its Attorneys

                              Michael A. Doornweerd
                              Andrew F. Merrick
                              JENNER & BLOCK LLP
                              353 North Clark Street
                              Chicago, IL 60654
                              Telephone: (312) 923-2631
                              MDoornweerd@jenner.com
                              AMerrick@jenner.com

                              - and -

                              Joseph J. McFadden
                              JENNER & BLOCK LLP
                              919 Third Avenue
                              37th Floor
                              New York, NY 10022-3908
                              Telephone: (212) 891-1658
                              JMcFadden@jenner.com

                              *Attorneys for Jet Aviation St. Louis, Inc.*
                              *f/k/a Midcoast Aviation, Inc.*

**CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that on the 21st day of February, 2012, I filed the foregoing Reply Brief in Support of Motion to Confirm Final Arbitration Award electronically, through the CM-ECF system, which caused counsel for B/E to be served by electronic means.

/s/ Michael A. Doornweerd